UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NICOLE ELIZABETH WASSON, | Case No. 2:22-cv-00484-NJK |
| Plaintiff(s), | **ORDER** |
| v. | |
| KILOLO KIJAKAZI, | |
| Defendant(s). | |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI of the Social Security Act. Currently before the Court is Plaintiff's motion to reverse or remand. Docket No. 19. The Commissioner filed a response and cross-motion to affirm. Docket Nos. 20, 21. Plaintiff filed a reply to the Commissioner's response. Docket No. 22.

**I.   STANDARDS**

    A.   Disability Evaluation Process

The standard for determining disability is whether a social security claimant has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(3)(A). That determination is made by following a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). The first step addresses whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] The second step addresses whether the claimant has a medically determinable impairment that is severe

---

[1] The five-step process is largely the same for both Title II and Title XVI claims. For a Title II claim, however, a claimant must also meet insurance requirements. 20 C.F.R. § 404.130.

1

or a combination of impairments that significantly limits basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The third step addresses whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. There is then a determination of the claimant's residual functional capacity ("RFC"), which assesses the claimant's ability to do physical and mental work-related activities. 20 C.F.R. §§ 404.1520(e), 416.920(e). The fourth step addresses whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The fifth step addresses whether the claimant is able to do other work considering the residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### B. Judicial Review

After exhausting the administrative process, a claimant may seek judicial review of a decision denying social security benefits. 42 U.S.C. § 405(g). The Court must uphold a decision denying benefits if the proper legal standard was applied and there is substantial evidence in the record as a whole to support the decision. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is "more than a mere scintilla," which equates to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

## II. BACKGROUND

### A. Procedural History

On October 31, 2016, Plaintiff protectively filed an application for Social Security Disability Insurance benefits pursuant to Title II of the Social Security Act.[2] Administrative

---

[2] There is disagreement between the parties as to when Plaintiff first filed for Social Security benefits. *Compare* Docket No. 19 at 3 *with* Docket No. 20 at 2. Knowing the precise application date is exceptionally important here as Plaintiff's October 31, 2016, application for benefits could be read to preclude a protective filing date for her Title XVI application. A.R. 342 ("I do not want to file for SSI."). *Cf.* Programs Operation Manual Systems GN 00204.020(D). This small ambiguity in the record creates the potential for significant legal issues as the standards for the evaluation of medical evidence changed in the time between the filing of Plaintiff's Title II

Record ("A.R.") 342-343. Plaintiff alleged a disability starting on September 23, 2016. A.R. 342. On February 14, 2018, Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act, A.R. 356, alleging a disability starting January 1, 2016, A.R. 357. Plaintiff's initial application was denied on April 12, 2017. A.R. 164. Plaintiff then filed a request for reconsideration, A.R. 172, which was denied, A.R. 173-75. On September 21, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") regarding her benefits determination. A.R. 179. ALJ Timothy Stueve held a hearing on August 14, 2019. A.R. 82-103. He issued a decision denying Plaintiff benefits on September 3, 2019. A.R. 132-45.

Plaintiff filed a request for review by the Appeals Council on October 30, 2019. A.R. 252-54. In June 2020 the Appeals Council ordered Plaintiff's case remanded for another hearing before an ALJ. A.R. 157-63. The Council determined remand to be appropriate as a portion of the record related to a different claimant and Plaintiff had submitted new evidence. A.R. 159-60. The remand order directed the ALJ to retain a medical expert to opine on the nature and severity of Plaintiff's impairments. A.R. 160.

ALJ Cynthia Hoover conducted the subsequent hearing in January 2021. A.R. 54-81. At that hearing, Dr. Julian Melamed testified as a medical expert, A.R. 53-65, and Elizabeth Brown-Ramos testified as a vocational expert, A.R. 75-79. On March 17, 2021, ALJ Hoover issued a decision again denying Plaintiff benefits. A.R. 15-34.

---

application and her Title XVI application. *See, e.g.*, 20 C.F.R. §§ 404.1527, 404.1520c. However, the parties have not addressed this issue in their briefing. The regulations addressing treating a Title II application as an oral inquiry for SSI benefits are silent on the issue of excluding an SSI protective date from such an application. 20 C.F.R. §§ 416.350, 416.345. When a claimant fails to raise a challenge "during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel." *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017) (holding that a claimant waived challenge to vocational expert testimony by not raising the issue before the ALJ). Given that the issue was not raised by Plaintiff either before the ALJ or in her motion, the Court considers any challenge to the protective filing date and applicable standard waived. *See, e.g.*, *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 1999); *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). As such the Court will evaluate the ALJ's weighing of the medical opinion evidence under 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff again requested that the Appeals Council review the ALJ decision. A.R. 338-41. On January 19, 2022, the Appeals Council declined to change the ALJ's decision, A.R. 1-5, making it the final decision of the Commissioner. *See* 42 U.S.C. § 405(g). The instant case was filed on March 17, 2022. Docket No. 1.

B. The Decision Below

ALJ Hoover first noted that Plaintiff satisfied the insured status requirements. A.R. 18. The ALJ's decision followed the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920. A.R. 15-34. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 23, 2016. A.R. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: seizure disorder; headaches; low grade CNS neoplasm; degenerative disc disease; obesity, status post bariatric surgery; mild left knee osteoarthritis; coronary artery disease; depressive disorder; and anxiety and obsessive-compulsive disorder. A.R. 18-20. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. A.R. 20-24. The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work as defined by 20 C.F.R. § 416.967(a) except that she can: (1) occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds; (2) occasionally balance on level surfaces and occasionally stoop; (3) never perform kneeling, crouching, or crawling; (4) never tolerate exposure to unprotected moving mechanical parts or unprotected heights; and (5) understand, remember, and carry out simple, routine tasks with concentration, persistence, and pace for such. A.R. 24-32. At step four, the ALJ found that Plaintiff is unable to perform any past work. A.R. 32. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, based on Plaintiff's age, education, work experience, and residual functional capacity. A.R. 33. The ALJ considered the Medical Vocational Rules, which provide a framework for finding Plaintiff disabled or not. In addition to considering the medical vocational rules, the ALJ took testimony from a vocational expert that an individual with the same residual functional capacity and vocational factors as Plaintiff could perform work as a table worker/spotter, order clerk, or bonder electronics. A.R.

32-33. In doing so, the ALJ defined Plaintiff as a younger individual age 45-49, although Plaintiff was initially defined as a younger individual aged 18-44 at the time the application was filed. A.R. 32. The ALJ found that Plaintiff has at least a high school education and further found the transferability of job skills to be immaterial. *Id.* Based on these findings, the ALJ found Plaintiff not disabled since September 23, 2016. A.R. 34.

**III.    ANALYSIS**

Plaintiff raises two issues on appeal. First, she submits that the ALJ's RFC determination was not supported by substantial evidence because the ALJ "rejected every medical opinion on [the] record." Docket No. 19 at 8. Plaintiff also submits that the ALJ's "rejection" of Dr. Melamed's opinion was improper. *Id.*

A.    The RFC Determination

Plaintiff first submits that the ALJ's RFC determination was not supported by substantial evidence. Docket No. 19 at 8-9. Specifically, she claims that the ALJ erred in discounting, either entirely or partially, every medical opinion in the record. *Id.* She also asserts that the ALJ rendered an improper medical opinion by making an RFC determination different from the proffered medical opinion evidence. *Id.* at 10. The Commissioner responds that the RFC determination is based partially on medical opinion evidence and is otherwise supported by substantial evidence in the record. Docket No. 20 at 6-7. Additionally, the Commissioner asserts that the RFC determination is an administrative decision, not a medical opinion. *Id.*

"[R]esidual functional capacity is the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC determination considers all medically determinable impairments, including those that are not severe. *Id.* at §§ 404.1545(a), 416.945(a). The RFC assessment must consider all evidence in the record and "contain a thorough discussion of the objective medical and other evidence . . . ." *Laborin v. Berryhill*, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing SSR 96-8p, 61 Fed. Reg 34474, 34478 (July 2, 1996)). "The RFC is an administrative assessment of the extent to which an individual's medically determinable impairments … may affect his or her capacity to do work-related physical and mental activities." *Id.* (quoting SSR 96-8p, 61 Fed. Reg at 34475). "[A]t the administrative law judge hearing level

5

"… the administrative law judge … is responsible for assessing [Plaintiff's] residual functional capacity." 20 C.F.R. §§ 404.1546(c), 416.946(c). The residual functional capacity determination does not need to copy the exact opinion of any particular doctor, but "the ALJ is responsible for translating and incorporating clinical findings into a succinct" residual functional capacity. *Rounds v. Commissioner*, 795 F.3d 1177, 1185-86 (9th Cir. 2015), *as amended*, 807 F.3d 996, 1005-06 (9th Cir. 2015).

Plaintiff's primary argument is that the ALJ's crediting of the medical opinion evidence, or lack thereof, deprived the RFC determination of substantial evidentiary support. A review of the record demonstrates that this argument lacks merit.

The ALJ gave no weight to two state agency non-examining physicians because they reviewed the record prior to the incorporation of Plaintiff's Title XVI claim and, therefore, lacked access to the complete record. A.R. 29. The ALJ gave no weight to the statements of Charvela Garland, NP-C, and Randal Peoples, M.D., because they did not address Plaintiff's functional abilities and therefore did not constitute medical opinion evidence. A.R. 30. The ALJ gave no weight to the statement of Steven Bonn, LMFT, because he was not an appropriate medical source. A.R. 31. Further, the ALJ gave some weight to Plaintiff's daughter's third-party function report, but did not give it full weight because of Plaintiff's daughter's lack of medical training and the familial relationship between the two. *Id.*

The ALJ also gave no weight to the opinion of treating physician Karen L. Cruey, M.D. *Id.* "An ALJ may only reject [a treating physician's opinion] by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ gave no weight to Dr. Cruey's opinion because it was "vague," did "not provide insight into [Plaintiff's] function-by-function mental abilities," and it "seem[ed] to be based largely on [Plaintiff's] subjective reports rather than objective findings from treatment visits." A.R. 31. At no point in her report does Dr. Cruey provide specific examples of Plaintiff's behavior or functioning or outline objective reasoning for her conclusions. *See* A.R. 3413-25. Instead, much of the report is a mere relaying of Plaintiff's history of trauma and her reports of depression and

6

anxiety. A.R. 3413-18. Similarly, Dr. Cruey's progress notes primarily provide a recounting of Plaintiff's self-reports with minimal findings or observations by Dr. Cruey. A.R. 3825-30. "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020). Here, there was little to no explanation in Dr. Cruey's report. The Court therefore finds that the ALJ gave specific and legitimate reasons for giving no weight to Dr. Cruey's opinion.

The ALJ gave little weight to the opinion of Dr. Melamed, a non-examining physician. A.R. 29-30. As will be discussed more fully below, this was also proper.

Plaintiff initially alleges that the RFC determination is not supported by substantial evidence because the "ALJ rejected every medical opinion on this record." Docket No. 19 at 8. However, Plaintiff later acknowledges that the ALJ actually gave Dr. Melamed's opinion little weight. *Id.* at 10. Indeed, the ALJ incorporated several of Dr. Melamed's recommendations into the RFC determination. Specifically, the ALJ adopted Dr. Melamed's recommendations that Plaintiff be restricted from climbing ladders, ropes, or scaffolds, that Plaintiff can never be exposed to unprotected heights or moving mechanical parts, and that Plaintiff can never kneel, crouch, or crawl. *Compare* A.R. 24 *with* A.R. 63-64. Additionally, the ALJ's RFC determination classified Plaintiff as being capable of doing "sedentary work," which accords with Dr. Melamed's suggested exertional limitations. *Compare* A.R. 24 *with* A.R. 63; *see also* 20 C.F.R. §§ 404.1567(a), 416.967(a).

The Court finds that the remainder of the RFC determination was also supported by substantial evidence. Plaintiff's medical history is complicated or, as Dr. Melamed and Plaintiff have phrased it, Plaintiff is a "medical textbook … in terms of the variety and severity of her impairments." Docket No. 19 at 9; A.R. 61. Plaintiff concedes "that the ALJ fairly and accurately summarized the evidence contained in the administrative record except as specifically identified in [her] motion." Docket No. 19 at 4. A review of the record shows that the ALJ considered the variety and duration of Plaintiff's impairments in crafting the RFC determination.

The ALJ canvassed Plaintiff's treatment history for her neurological symptoms, considering the multiple MRIs and differing diagnoses, before determining that "the evidence does not establish that [Plaintiff's] neurological symptoms preclude work activity." A.R. 25-26. In determining that exertional limitations were appropriate for Plaintiff, the ALJ reviewed Plaintiff's history of and treatment for degenerative disc disease and knee pain. A.R. 26-27. Considering the conservative treatments prescribed and the fluctuating intensity of symptoms, the ALJ concluded that these impairments did not preclude Plaintiff from work. *Id.* Given that Plaintiff has undergone bariatric surgery and has a history of unremarkable test results related to her cardiac functioning, the ALJ concluded that, subject to certain exertional limitations, Plaintiff's history of coronary artery disease did not bar her from working. A.R. 27-28. The ALJ considered Plaintiff's high BMI, but noted that the record indicates that Plaintiff has maintained a base level of activity and lost weight during the relevant period such that Plaintiff's BMI does not prevent her from working. A.R. 27. Finally, the ALJ reviewed Plaintiff's mental health history. Though Plaintiff does have a history of mental health impairments, the record of symptoms is not constant. A.R. 28 (citing A.R. 1119, 2197-2200, 3691, 3820). Moreover, Plaintiff's records show that medication and weekly treatment have helped her mental health conditions. *Id.* (citing A.R. 4163). These factors, combined with Plaintiff's lack of need for emergency or inpatient psychiatric care and her ability to perform basic daily actives with assistance, caused the ALJ to reasonably conclude that Plaintiff could work provided she was limited to no more than simple tasks. A.R. 28.

The ALJ also noted that the record contains inconsistent evidence regarding Plaintiff's impairments. *Id.* For example, the record contains evidence both that Plaintiff had ambulatory issues and that Plaintiff had a normal gait when not directly observed. *Id.* (citing A.R. 714, 1353, 2125). Additionally, the ALJ reasoned that the unremarkable test results and evidence of conservative treatment in the record undermined the alleged severity of Plaintiff's mental and physical impairments. *Id.* The ALJ's review of Plaintiff's alleged impairments, combined with the record's internal inconsistencies and the evidence of conservative treatment, endorses a finding that the RFC determination is supported by substantial evidence. *Cf. Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a

claimant's testimony regarding severity of impairment.") (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).

Plaintiff also submits that the ALJ's RFC determination constitutes an impermissible medical opinion. Docket No. 19 at 10-11. The RFC determination is specifically reserved to the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c). Plaintiff cites a number of cases for the proposition that an ALJ cannot render her own medical opinion and is not permitted to independently assess clinical findings. Docket No. 19 at 10. The Commissioner responds that the cases Plaintiff cites instead stand for the proposition that an RFC must be supported by substantial evidence but need not match the limitations suggested by physicians. Docket No. 20 at 9.

*Tackett v. Apfel*, 180 F.3d 1094, 1102-1103 (9th Cir. 1999), involved an ALJ making an RFC determination that the plaintiff needed to shift position every two hours. The medical opinion evidence suggested that the plaintiff could work as long he could shift every thirty minutes. *Id.* at 1103. The only evidence in the record supporting the ALJ's deviation from this recommendation was that the plaintiff had recently taken an extended road trip. *Id.* The *Tackett* court concluded that, since no evidence existed as to how the road trip proceeded and no other medical opinion evidence in the record supported the RFC, the ALJ's determination was not supported by substantial evidence. *Id. de Gutierrez v. Saul*, 2020 WL 5701019, *5-6 (E.D. Cal. 2020), also resulted in a finding that the ALJ's RFC determination was not supported by substantial evidence. There, the "RFC determination was based solely on treatment notes, test results, and [the plaintiff's] testimony." *Id.* at *5. The medical records provided were also unclear as to the plaintiff's functional limitations and their impact on the claimant's ability to work. *Id.* The final case from this Circuit cited by Plaintiff is *Goolsby v. Berryhill*. 2017 WL 1090162 (E.D. Cal. 2017). There, the ALJ made an RFC determination regarding the plaintiff's mental capabilities while also rejecting the only medical opinion evidence in the record addressing them. *Id.* at *8.

The Court agrees that "[i]t is well-settled that an ALJ may not render her own medical opinion and is not empowered to independently assess clinical findings." *de Gutierrez*, 2020 WL 5701019, at *5. The instant case, however, is distinguishable from those above. The above cases all involved an RFC determination that had no basis in medical opinion evidence. *Tackett*, 180

9

F.3d at 1102-03; *de Gutierrez*, 2020 WL 5701019, at *5; *Goolsby*, 2017 WL 1090162, at *8. Here, however, the ALJ adopted many of the recommendations contained in the medical opinion evidence. To the extent that the RFC determination did not match Dr. Melamed's recommendations, the ALJ provided specific and legitimate reasons for the variances. An ALJ's RFC determination need not specifically match a physician's recommended limitations. *Rounds*, 795 F.3d at 1185-86, *as amended*, 807 F.3d 996 at 1005-06. Accordingly, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

B.   Dr. Melamed's Opinion

Plaintiff's second argument is that the ALJ erred by not fully crediting the opinion of the testifying medical expert, Dr. Melamed. Docket No. 19 at 11-12. Plaintiff alleges that the ALJ failed to "clearly identify" reasons for rejecting Dr. Melamed's recommendations regarding the amount Plaintiff can sit in a day, Plaintiff's need for an assistive walking device, and Plaintiff's weakness. *Id.* at 12-14. The Commissioner responds that the ALJ incorporated portions of Dr. Melamed's recommendations into the RFC determination. Docket No. 20 at 13. To the extent that the ALJ rejected Dr. Melamed's recommendations, the Commissioner submits that the ALJ provided specific and legitimate reasons. *Id.*

As the initial claim in this case was filed on October 31, 2016, the ALJ's treatment of Dr. Melamed's opinion will be evaluated under the rules for evaluating opinion evidence for claims filed before March 27, 2017. 20 C.F.R. §§ 404.1527, 416.927. Medical opinion evidence is defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." *Id.* §§ 404.1527(a), 416.927(a). An ALJ must justify the weight she gives to all medical opinion evidence. *Id.* §§ 404.1527(c), 416.927(c). "The weight afforded a non-examining physician's testimony depends on the degree to which he provides supporting evidence explanations for his opinions." Garrson, 759 F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1201 (9th Cir. 2008)). The ALJ must provide specific and legitimate reasons for why she chose to credit or discredit medical opinion evidence. *See Ford*, 950 F.3d at 1154 (stating

10

the standard for when an ALJ discounts a treating or examining physician's opinion) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)); *see also Garrison*, 759 F.3d at 1012 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs."). Absent additional support in the record, a non-examining physician's opinion does not constitute substantial evidence. *Lester*, 81 F.3d at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

Plaintiff's first objection to the ALJ's weighing of Dr. Melamed's opinion is that the ALJ erred by rejecting the recommendation as to how much time Plaintiff can sit in a day. Docket No. 19 at 12. Dr. Melamed's opinion is based on his review of Plaintiff's medical records. A.R. 59. Consequently, his opinion is that of a non-examining physician. 20 C.F.R. §§ 404.1527, 416.927. A non-examining physician's opinion must be supported by other evidence in the record. *Garrison*, 759 F.3d at 1012. The ALJ rejected Dr. Melamed's opinion regarding the total amount of time Plaintiff can sit in a day because Dr. Melamed provided no support for his opinion that Plaintiff should be limited to five to six hours of sitting in an eight-hour workday. A.R. 29, 63-64. Since the non-examining physician has no relationship with a claimant, his opinion is weighed relative to the provided supporting explanations. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). To the extent other evidence in the record may or may not suggest a sitting limitation, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence." *Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995)). Given the lack of support in the record for Dr. Melamed's opinion regarding the length of time Plaintiff can sit in a day, the Court finds that the ALJ did not err in not incorporating it into the RFC.

Plaintiff also submits that the ALJ improperly rejected the recommendation that Plaintiff requires an assistive walking device. Docket No. 19 at 13. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed…." SSR 96-9p, 1996 WL 374185 (Soc. Sec. Admin. 1996). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be

upheld." *Shaibi*, 883 F.3d at 1108 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Here the ALJ recognized that there was evidence of Plaintiff's past use of an assistive walking device in the record. A.R. 29 (citing A.R. 1360, 4012). The record also includes evidence that Plaintiff has been able to proceed without an assistive walking device, both when she had a regular gait, A.R. 714, 1353, 1961, 2139, 2216, 3820, and an ataxic gait, A.R. 712, 1373, 1547, 3673. Moreover, there is evidence in the record that Plaintiff had an ataxic gait when directly observed, but walked normally when not under direct observation. A.R. 2125. The ALJ considered this contradicting evidence in making the determination that an assistive walking device was not necessary. A.R. 28-29. Accordingly, the ALJ's analysis relating to this portion of Dr. Melamed's opinion is supported by substantial evidence.

Plaintiff further submits that the ALJ erred in rejecting Dr. Melamed's opinion regarding the extent to which Plaintiff will experience weakness. Docket No. 19 at 15. The ALJ rejected Dr. Melamed's opinion regarding reduced manipulative limitations as lacking support in the record. A.R. 30. She concluded instead that the limitations imposed in the RFC would be sufficient to address Plaintiff's impairments. *Id.* Much like Plaintiff's other impairments, the record contains conflicting evidence regarding her weakness. Plaintiff has been observed having reduced strength in her extremities. A.R. 3673. However, she has also been observed without tremors and with normal strength and muscle bulk. A.R. 1360, 2139, 4197. The ALJ determined that Plaintiff's inconsistent symptoms and her testimony regarding her ability to conduct daily life activities undercut Dr. Melamed's more restrictive suggested limitations. A.R. 30; *see also* A.R 69-70 (Plaintiff's hearing testimony).

At the evidentiary hearing, Plaintiff testified that she can sweep, vacuum, and do dishes without assistance and can do laundry, prepare meals, and go grocery shopping with assistance. A.R. 69-70. "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Cohen v. Sec'y of Dep'r of Health & Hum. Services*, 964 F.2d 524, 530-31 (9th Cir. 1992)). Plaintiff testified that her ability to do daily activities is dependent upon how she is feeling that day and whether her daughter is available to help. A.R. 69-70. Given Plaintiff's reliance on the ability to

rest and otherwise depend on the comforts of home in doing her daily activities, it is unlikely that her abilities would translate to the more grueling environment of the workplace. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The Court therefore finds that ALJ erred in relying on Plaintiff's testimony regarding her ability to do day-to-day activities when crafting the RFC.

"A decision of the ALJ will not be reversed for errors that are harmless." *Burch*, 400 F.3d at 679 (citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)). An error is harmless "when it is clear from the record that the ALJ's error was inconsequential in the ultimate disability determination." *Tomasetti*, 533 F.3d at 1036 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). Here, even without Plaintiff's testimony, the record contained sufficient evidence to allow the ALJ to conclude that Dr. Melamed's recommended limitation was excessive. Accordingly, the Court finds that the ALJ's reference to Plaintiff's testimony constitutes a harmless error.

In sum, the Court finds that the ALJ provided specific and legitimate reasons for the weight she accorded Dr. Melamed's opinion. Accordingly, the ALJ's determination that gave little weight to Dr. Melamed's opinion was not an error.

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** the motion to remand, Docket No. 19, and **GRANTS** the countermotion to affirm, Docket No. 21. The Clerk's Office is instructed to **enter final judgment** accordingly and to **close** this case.

IT IS SO ORDERED.

Dated: October 25, 2022.

NANCY J. KOPPE
UNITED STATES MAGISTRATE JUDGE